## SMITHS' vs. McCONATHY.

1. What constitutes a nuisance is a question of law.

2. In an action for a private nuisance it is not necessary to allege or prove any special damages.

3. In a private action for a public nuisance, special damages must be averred and proved.

4. A distillery, with styes in which large quantities of hogs are kept, the offal from which renders the waters of a creek unwholesome, and the vapours from which render a dwelling uninhabitable, is a *nuisance.*

5. In an action for a private nuisance, evidence cannot be given of injuries other than those alleged in the declaration.

## ERROR to Boone Circuit Court.

CLARK & YOUNG, *for Plaintiffs.*

1. The court erred in refusing to permit plaintiffs to prove that the water in the Bone Feme creek was rendered unfit for the use of horses and other stock and for other domestic purposes at the farm of the plaintiffs; and that the fish in the creek were destroyed and rendered unfit for use by the distillery. 2 Starkie's Ev., 541.

2. It was error in the court to refuse the 3d instruction asked by the plaintiffs. 2 Starkie, 540-1; Veeder vs. Veeder, 1 Denio, 257; Staple vs. Spring, 10 Mass. R., 74; Woodman, et al, vs. Tufts, et al, 9 N. H. Rep., 88; Greenleaf, 387.

3. The evidence given in the case, established beyond doubt, the erection and continuance of the nuisance by defendant, and the great injury done to the rights of plaintiffs, and the verdict of the jury was therefore evidently against the evidence and law of the case, and the court should have set it aside and granted a new trial, and the refusal to do so is relied upon as sufficient to reverse the case.

4. The instructions given by the court for the defendant are not law, and particularly the first instruction. Unexplained, it was well calculated to mislead the jury.

GORDON & LEONARD, *for Defendant.*

The declaration is for a nuisance to the [dwelling house and farm of the plaintiffs by the production of offensive smells, that rendered the occupation of them uncomfortable and unhealthy and is for no other description of injury whatever.

The 1st count specifies the manner in which the smells were produced, while the second count is general, omitting the statement of the manner of their production. The 1st count states the injurious acts committed by the defendant, the erection of the distillery and hog styes—the feeding of hogs in the styes with the slops from the distillery and the placing of the offal from the distilleries and styes upon the ground and in the creek, and then alleges, that *thereby* the defendant produced in the plaintiffs' house and on their farm smells so offensive as to render their occupation of them unwholesome and uncomfortable. This is the substance of the charge, and the whole charge. There is no allegation in the declaration that the fish in the creek were destroyed or rendered unfit for use, or that the water of the creek was in any manner injured. The counts are in the usual form for injuries of the former description, and not at all in conformity with the precedents for destroying the fish or injuring the water of a running stream. The proof therefore tendered by the plaintiffs, that the water and fish of the creek were rendered unfit for use, was properly rejected, while even the proof allowed to the plaintiffs that the offal killed the fish and in this manner produced offensive smells, was more than questionable. 1 Denio's Rep., 257; Veeder vs. Veeder.

2. The injury complained of is to the possession and not to the freehold or inheritance, and therefore the proof offered that the offensive smells rendered the farm less valuable was rightly rejected, while the plaintiffs were at the same time allowed to prove that their use and occupation of it, was during the time of the alleged nuisance, less valuable than it otherwise would have been.

3. The court in the plaintiffs' 1st and 2nd instructions directed the jury that "if the offensive smells rendered the occupation of the plaintiffs' premises uncomfortable or unhealthy, or disturbed them in the use and occupation of their farm, they ought to find for the plaintiffs." Every offensive odor is not a nuisance. A mere inconvenience or a slight disturbance will not answer—

there must be some substantial damage. It was impossible however for the court to define to the jury with mathematical precision what degree of intensity in the offensive smells would constitute them a nuisance; but the criterion adopted in the two instructions given as above, put the case to the jury on as favorable grounds for the plaintiffs as the law would permit; and when the court was asked by the plaintiffs to go still further and declare in the words of their 3d and 4th instructions that "if it prevented them from enjoying their premises in as ample a manner as they otherwise would have done, they ought to find for the plaintiffs," the instructions asked were properly rejected. It may be suggested that there is no substantial difference between the rule contained in the 1st and 2nd and that contained in the 3d and 4th instructions offered by the plaintiffs; and if so, the refusal of the last, after giving the first, cannot of course, be assigned as error. 32 E· C. L. Rep., 629; 2 Greenleaf's Ev., 384, sec. 474; Wheaton's Selwyn's, N. P., title 'Nuisance,' 1137.

4. To entitle the plaintiffs to a verdict for an alleged nuisance of the character of the one charged, it must be shown, first, that the defendant committed some of the alleged injurious acts, and second, that these acts occasioned some damage to the plaintiffs, and this is the substance of the plaintiffs' first instruction. Nor was there any thing here to mislead the jury, for they were at the same time told in the instructions given at the instance of the plaintiffs, that "if these acts rendered the occupation of the premises unhealthy or uncomfortable, or disturbed the plaintiffs in their use of them, they must find for the plaintiffs, and assess them such damages as the jury should believe they had sustained during the time complained of. 2 Greenleaf's Ev., 383.

5. The plaintiffs acquired the property after the erection of the nuisance complained of, and therefore cannot sue, until they give the defendant notice to remove it. And this objection may now be insisted on. The plaintiffs presented their whole case to the jury, and that case is preserved in the bill of exceptions. No notice was given, and if this judgment were now reversed upon a new trial, no recovery could be had for want of the notice, and of course this court will not reverse. Woodman, et al, vs. Tufts, et al, 9 N. H. Rep., 88; 2 Greenleaf's Ev., 385; 1 Chit· Plead., 101; Plummer vs. Harper, 3 N. H. Rep., 88; Pennruddock's case, 5 Coke's Rep., 100.

6. Whether the alleged acts amounted to a nuisance was a matter peculiarly within the province of the jury, and the jury upon a fair ruling of the law of the case, having pronounced against the alleged nuisance, and the court having concurred in the finding, there is nothing in the evidence preserved, to induce this Court to reverse the judgment on account of the verdict being against evidence.

7. The plaintiffs' 5th instruction related exclusively to the measure of damages, and whether correctly refused or not is now immaterial as the jury found against the alleged nuisance and that finding could not have been changed or at all affected by the instruction, if it had been given.

NAPTON, J., *delivered the opinion of the Court.*

This was an action of trespass on the case for a nuisance. The first count in the declaration charged that the defendant on a day specied erected on his land a distillery and divers slop pools and hog styes, and that defendant fed a large number of hogs in these pools and styes with the slops from said distillery; that large quantities of slops and offal passed from said said styes into a certain creek, called Bonne Femme, the waters of which ran in a direction from the land of the defendant, towards, through and over the lands of the plaintiffs, whereby divers noxious and offensive smells and stenches arising from the offal and slops entered said dwelling house and premises aforesaid and rendered the same unwhole-

some and annoyed, incommoded and greatly disturbed the plaintiffs in the possession and enjoyment of the said dwelling house and farm, and that they were injured and hindered in their business of farming, &c. The second count charges the defendant with having wrongfully and in-juriously caused and procured divers noxious and offensive smells, vapours, &c., to arise and ascend near the dwelling house of the plaintiffs and on the farm of the plaintiffs, by means of which the dwelling house and farm were rendered uncomfortable and unhealthy and unfit for habitation, &c.

The plea was not guilty. At the trial, the plaintiffs gave evidence tend-ding to prove the facts alleged in the declaration. They offered to prove further, that the waters of the Bonne Femme creek were rendered unwholesome by means of the nuisance complained of, and unfit for the use of the horses and cattle and other stock on the plaintiffs' farm, and that the fish were destroyed and rendered unfit for use. This evidence was excluded and an exception taken.

The court instructed the jury at the instance of the plaintiffs as follows :

1. That if the jury believe that the plaintiffs at the time of the commencement of this suit were in the possession of the lands and premises described in the declaration, that the defendants erected and used, or used a distillery and fed hogs or other animals upon the slop produced and created thereby, and the same was allowed to flow into and run down the creek, Bonne Femme, and created in said creek a disagreeable smell or stench which rendered the use and occupation of the plaintiffs' premises uncomfortable or unhealthy, they will find for the plaintiffs.

2. If the jury believe from the evidence that the plaintiffs were at the times between the first day of August, 1846, and the time of bringing of this suit, in the possession of the farm and messuages described in the declaration, and that by reason of the defendant carrying on the distillery and erecting or using the hog styes and running the slops of said distillery into said hog styes, and by reason of running the same into the Bonne Femme creek, the offal and slops of said styes and distilleries, they produced noxious and offensive vapors, fumes, smells and stenches, which rendered the habitation of the plaintiffs uncomfortable, and annoyed and incommoded the plaintiffs in the use, possession, occupation and enjoyment of said habitation and farm, or prevented and disturbed them in the possession and cultivation of the said farm, they must find for the plaintiffs.

3. That if the jury believe the use and occupation of the mill, distil-

lery and hog pens, described in the plaintiffs' declaration, by the defendant, produced or continued any stench or smell at and upon the farm and residence occupied by the plaintiffs, so as to render it uncomfortable or unwholesome for them to use and enjoy the same at any time complained of in the declaration, they will find for the plaintiffs such damages as the jury believe they may have sustained on account thereof during the time aforesaid.

The court refused to give the following instructions asked by the plaintiffs:

1. That although the jury may believe from the evidence that the nuisance complained of in the declaration existed before the commencement of this suit, yet, if they believe that the defendant continued it, and by such continuance rendered the habitation and farm of plaintiffs uncomfortable and disagreeable, or prevented them from enjoying or cultivating the same, in so ample a manner as they otherwise could, they must find for the plaintiffs.

2. That it is not necessary to prove any special damage done by such nuisance, but that it is sufficient to prove that, by reason of the nuisance, the plaintiffs could not enjoy their rights in as ample a manner as they otherwise could.

3. That the measure of damages is the amount of injury the plaintiffs sustained in the comfortable and wholesome enjoyment of the property described, during the times specified in the declaration, to-wit, from the first of August, 1846, to the bringing of this suit.

At the defendant's request, the court gave the following instructions:

1. To enable the plaintiffs to recover, it is upon them to show to the satisfaction of the jury, first, that the defendant committed some of the unlawful acts charged against him in the declaration; and, second, that plaintiffs sustained some damage therefrom.

2. The present suit is founded on the possession of the plaintiffs, and not upon their title; and the only damage for which they can recover in this action is, that which was occasioned after they acquired the possession of the premises, and before the commencement of this suit.

3. In the present suit, the plaintiffs have not alleged that the acts complained of have injured the water of the creek by rendering it unfit or less fit for domestic or farming purposes than it otherwise would have been, or that they have destroyed the fish therein; and therefore the plaintiffs cannot recover for any such injuries in this suit.

4. If the stenches of which the plaintiffs complain have a tendency to produce human disease, yet the plaintiffs cannot recover on that ground,

unless they are satisfied from the evidence that these stenches did actually produce disease in the plaintiffs, or some of them, or some of their family.

A verdict was found for the defendant. A motion for a new trial was made and overruled, and the case brought here by writ of error.

The principal question in this case grows out of the instructions. It may be inferred from the first and fourth instructions given at the instance of the defendant, and the refusal to give the third, fourth and fifth asked by the plaintiffs, that the Circuit Court esteemed it essential to the maintenance of the action that some special damage should be proved. The first instruction given at the defendant's request does not use the phrase "*special damage*," but when taken in connection with the fourth instruction given on the same side, and the refusal of those which the plaintiff asked on this point, must be understood as conveying to the jury the same proposition which would have been implied by the use of more explicit phraseology. The fourth instruction seems to place the meaning of the court beyond controversy; for, in this instruction, the jury are told that it is not sufficient that the nuisance complained of had a tendency to produce disease in the plaintiffs' family, but actual disease was necessary to be proved as the consequence of this nuisance before any cause of action accrued.

This view of the subject we consider as erroneous. In an action for a private nuisance, it is not necessary to alledge or prove any special damage. In a private action for a public nuisance, such allegations and proofs are necessary. No one individual can maintain an action for a public nuisance, unless he has sustained some special damage from such nuisance, over and above the injury which the community at large suffer. But if a private nuisance be alleged and proved, the plaintiff is entitled to recover nominal damages at least, whatever amount of inconvenience or injury may have been occasioned by it.

It is very true that there cannot be a private nuisance unless it be attended with some damage or inconvenience to the party injured, and this idea enters into the very definition of a nuisance. Hence the books speak of the necessity of proving the injury sustained by the nuisance, as well as the continuance or erection of the nuisance. But it is very material to the plaintiff that the distinction between the nature and amount of damage which will constitute a nuisance and the extent of injury which has actually resulted to the plaintiff from the nuisance, be preserved. What constitutes a nuisance is a question of law for the determination of the court. If the facts stated in the declaration do not

amount to a nuisance, the defendant can demur and have the question of law decided by the proper tribunal. But if the facts averred do constitute a nuisance, it is sufficient for the plaintiff to prove them, and it is not necessary that he should also prove that he has been specially injured by such nuisance.

This distinction is illustrated by an action for slanderous words. If the words charged in the declaration be such as the law deems actionable, it is only necessary for the plaintiff to prove the speaking. It is unnecessary to prove special damage. It is an implication of law that such words are injurious to the reputation of the plaintiff, and that he is entitled to his action. If the words spoken are not actionable *per se,* special damage is the only ground upon which an action will lie, and special damage must in such cases be proved. Such is also the law in actions for private nuisances, or to speak with more propriety, in actions for nuisances—for public nuisances can be no ground of private action, unless attended with special injury to the party suing.

There may be difficulty, in some cases, in determining what is a nuisance. The term has not been very distinctly defined in the books, and it is said, that a slight inconvenience will not create a nuisance for which an action will lie. But whilst cases might be imagined and stated, in which the amount of inconvenience or injury might be important in determining whether the acts charged constituted a nuisance or not, this is certainly not one of them. It cannot be doubted, that the facts charged in this declaration constituted a nuisance, and so the court charged the jury in the first and second instructions given at the instance of the plaintiffs.

When we look at the nature of most of the private nuisances spoken of in the books, we cannot fail to perceive the propriety of allowing a recovery upon the mere proof of the existence of the nuisance. Take the case of a smith's forge, a privy, or a lime-kiln, (all of which are frequently spoken of as nuisances,) erected so near a dwelling house as to render it unfit for habitation. How could the plaintiff establish any special damage resulting to himself from the erection of such nuisances? If a pecuniary loss be the criterion of special damage, the most intolerable nuisances would be without redress. It would be but a mockery to call such things nuisances, and at the same time make the right of action depend upon proof of special damages. In fact, damages are not usually the object of such suits. The principal object is to establish the fact of nuisance, so that a second suit may recover more substantial damages, if

the nuisance be continued, or the verdict and judgment in the first suit may be the foundation of proceedings to abate the nuisance.

The circuit court, we think properly excluded the testimony designed to prove that the waters of the Bonne Femme were rendered unfit for the use of the plaintiff's stock. No such injury is complained of in either count of the declaration. It is true, the declaration alledges that the dwelling house and farm were rendered unwholesome and uncomfortable by reason of the erection of the nuisances complained of; but the natural and fair inference from the language of the declaration is, that the inconveniences mentioned 'were occasioned by the noxious vapors arising from the water, and not from the use of the water, for drinking, either by the plaintiffs, their servants or cattle.

The question of notice does not arise upon the record. It was not made in the Circuit Court, and it would be useless to venture an opinion upon a speculative state of facts, not passed upon by the jury.

The other Judges concurring, the judgment is reversed and the cause remanded.