MAX HOLTZMAN, INC., a corporation, Appellant,

v.

K & T COMPANY, INC., a corporation, t/a Tannon Sales, Appellee.

CONTINENTAL CASUALTY CO., an Insurance Corporation, Appellant,

v.

K & T COMPANY, INC., a corporation, t/a Tannon Sales, Appellee.

Nos. 9803, 9864.

District of Columbia Court of Appeals.

Argued May 19, 1976.

Decided June 27, 1977.

Joseph F. Cunningham, Washington, D. C., for appellant in No. 9803.

Philip J. Walsh, Washington, D. C., with whom James C. Gregg and Hugh Lynch, Jr., Washington, D. C., were on the brief, for appellant in No. 9864.

Burton D. Liss, Washington, D. C., for appellee.

Before FICKLING,* KERN and GAL-LAGHER, Associate Judges.

GALLAGHER, Associate Judge:

This is a consolidated appeal by Continental Casualty Co. (Continental), a general liability and casualty insurance carrier, and its general agent, Max Holtzman, Inc. (Holtzman) from a judgment in favor of K

---

* Associate Judge Fickling was a member of this division at the time the case was argued but did not participate in the decision as he died before the opinion was published.

& T Co., a retailer and the plaintiff below. The issues on appeal are essentially whether (1) the trial court erred in awarding damages to K & T when the insurance policy held by K & T excluded the items for which recovery was awarded, and (2) whether the general agent Holtzman is liable for damages to Continental if Continental is required to pay K & T.

In July 1973, K & T sustained a loss of a substantial number of watches as a result of a burglary of its store. Immediately thereafter it reported the burglary to Holtzman which filed a claim for reimbursement under Continental's policy. Holtzman assured K & T that the loss was covered but a short time later Continental rejected the claim on the ground that the policy explicitly excluded watches from coverage, and this suit followed.

In its complaint, K & T sought to recover from Holtzman and Continental on the insurance contract, and alternatively from Holtzman alone on the tort theory that the scope of protection had been negligently misrepresented to the insured by Holtzman. The defendants denied liability and Continental cross-claimed against its agent (and codefendant) Holtzman for damages which it might become obliged to pay to K & T.

After a trial without a jury, the Superior Court awarded damages to K & T in the stipulated amount of $3,015.50. The trial court's judgment order was in two parts: (a) a judgment on the contract against Continental only, and (b) an alternative judgment which would hold plaintiff entitled to recovery in tort for the negligent misrepresentations of defendant Holtzman. Because Continental would then be liable as principal for the tort of its agent, the trial judge further ordered that "should Plaintiff ultimately recover only on the alternative holding of Defendant Holtzman's negligence" Continental would be entitled to recover damages on its cross-claim against

Holtzman. We affirm the judgment against the insurance company (Continental) and remand the case for a finding of whether Holtzman was negligent as to Continental, and, if it was, the amount of damages owed by Holtzman to Continental.

▮ The material facts surrounding the disputes among the parties are largely agreed upon. The written findings of fact entered by the trial court in accordance with Super.Ct.Civ.R. 52(a) are supported by the evidence and are not clearly erroneous. These findings, which will be summarized, are, therefore, conclusive on appeal. D.C. Code 1973, § 17–305(a); *Lee Washington, Inc. v. Washington Motor Truck Transportation Employees Health & Welfare Trust,* D.C.App., 310 A.2d 604 (1973).

For several years before the events here at issue, K & T had obtained various types of insurance through Holtzman and in the early 1970's the coverage so procured included property protection provided by Travelers Insurance Company for the contents of K & T's store (including watches worth up to an aggregate value of $1000 per loss occurrence). Continental was not involved in any of these transactions until January, 1973, when Holtzman (Continental's general agent) suggested to K & T that it would be mutually beneficial to the agent and the insured to allow the Travelers policy to expire and to obtain coverage from another carrier. The new coverage agreed upon was to be "as good as or better than" that in force under the Travelers policy.[1] Pursuant to this agreement, Holtzman submitted various forms to Continental for "all-risks" property insurance on the contents of K & T's store, to be effective at the expiration of the Travelers policy on March 7, 1973.

▮ Both K & T and Holtzman were aware that watches had been covered by the Travelers policy.[2] Thus, no mention of exclusion of watches was made in the appli-

---

1. The purpose of the change was to provide the same or broader coverage to K & T for a lower premium, with a higher commission to Holtzman resulting.

2. In fact, the record shows a claim for loss of watches in a burglary had been made by K & T and paid by Travelers, with the knowledge of Holtzman, approximately three years before the trial in this cause.

cation; nor did either K & T or Holtzman have any intention of excluding watches from coverage. Moreover, Continental was capable of insuring watches; and Continental's general agent, Holtzman, was authorized under its agency agreement to obligate its principal to cover watches.[3] When the policy issued, Holtzman's president, based on his experience with all-risks policies, assumed that the printed portions were the same (insofar as coverage of watches was concerned) as those used by other carriers represented by his firm (i. e., without the watch exclusion) although he knew that Continental did not use the standard policy forms used by other carriers. He read only the typed portions which showed such items as dollar limits of liability to ensure that they conformed to the insured's desires. Similarly, upon delivery, K & T's secretary-treasurer put the policy in the store's safe without reading it.[4] Thus, neither Holtzman nor K & T was aware of the exclusionary clause until the loss was sustained.[5] Against this background, the trial court concluded that Continental was liable to K & T.[6]

It is undisputed that Holtzman was Continental's general agent with power to issue policies and to bind its principal. *Resnick v. Wolf & Cohen, Inc.,* D.C.Mun.App., 49 A.2d 809 (1946). Furthermore, it is evident that K & T and Holtzman mutually understood that the coverage under the new policy was not to be more restricted than in the policy which it was to replace. The secretary-treasurer of K & T who had dealt with Holtzman testified that he intended to procure insurance to cover all merchandise and Max Holtzman testified that he intended to obtain coverage for the watches.

■ As a general rule, antecedent verbal agreements for insurance are deemed merged in the written contract and cannot be modified by parol evidence. *Farmer's Mutual Hail Insurance Co. v. Fox Turkey Farms, Inc.,* 301 F.2d 697 (8th Cir.), cert. denied, 371 U.S. 877, 83 S.Ct. 149, 9 L.Ed.2d 115 (1962); Couch on Insurance § 14:20 (R. Anderson 2d ed. 1959). But when, as in this instance, an agent acting within the scope of his authority,[7] orally agrees to insure an applicant, and through mistake, a provision orally agreed upon is omitted from the written policy, a court in equity may intervene to reform the imperfectly written agreement to correct defects and to reflect the true agreement and intention of the parties. *Artmar, Inc. v. United Fire & Casualty Co.,* 34 Wis.2d 181, 148 N.W.2d 641, *modified on other grounds,* 34 Wis.2d 181, 151 N.W.2d 289 (1972); Couch on Insurance, *supra* at § 66:85 and cases cited therein; D. Dobbs, Handbook on the Law of Remedies § 11.6, at 746 (1973). *See also Hopkins v. Equitable Life Assurance Society of the*

3. At the time of trial, Holtzman was still Continental's general agent and, after the burglary, K & T's written policy was modified to provide for the omitted coverage of watches by Continental.

4. Continental's suggestion that the failure to read the policy amounted to contributory negligence on the part of K & T is without merit. Even if contributory negligence were a defense in an action in contract, failure of an insured to read a policy does not necessarily bar the insured from recovering. *Atchison & Keller, Inc. v. H. G. Smithy Co.,* D.C.App., 243 A.2d 46 (1968); *Sanders v. Monroe,* 56 App.D.C. 132, 10 F.2d 997 (1926). We conclude that under the circumstances of this case it does not preclude recovery for reasons we relate, *infra.*

5. We note that after delivery of the policy but before the loss, an independent contractor retained by Continental made a security inspection of K & T's premises. Although watches were prominently displayed at the time of the inspection, the contractor made no report of the obvious gap in coverage.

6. The trial court based its conclusion on a ground which differs from the reasoning of our decision. An appellate court may sustain a correct judgment on a ground different from that adopted by the trial court. *Liberty Mutual Ins. Co. v. District of Columbia,* D.C.App., 316 A.2d 871, 875 (1974); *Wells v. Wynn,* D.C. App., 311 A.2d 829 n. 2 (1973).

7. Although Holtzman's agency contract specifically states that the agent "agree[s] not to alter, modify, waive or change any of the provisions or conditions of our insurance contracts . . . ," Holtzman was authorized to issue policies covering the items contemplated by the plaintiff and Holtzman. Thus, Holtzman was acting within the scope of his authority in making the agreement with plaintiff.

*United States,* 107 R.I. 679, 270 A.2d 915 (1970).

In a concise articulation of the law of reformation in insurance contracts, one treatise states that when

a policy of insurance, which has been drawn up by the agent of the insurer and merely accepted by the insured, does not represent the intention of both parties, because of the fault or neglect of the agent, it may be reformed so as to express the contract it was intended should be made. Likewise, where the party applying for insurance states the facts to the agent and relies on him to write the policy, which will protect his interests, and the agent so understands, but fails by mistake to so write the contract, the mistake is considered mutual. The insured [is] entitled to a reformation and is not limited to a return of the policy and demand of a rescission. . . .

A mistake due to the negligence of an agent, acting within the scope of his employment, is satisfactory ground for reformation, since the insured ordinarily relies upon the agent to set out properly the facts in the application. [Footnotes omitted.] [13 J. Appleman, Insurance Law and Practice § 7609 (rev. ed. 1976).]

Additionally, it has been held that because of the reliance most individuals place on an insurance agent, "less is required [in an insurance case] to make out a cause of action for reformation than in ordinary contract disputes." *Artmar, Inc. v. United Fire & Casualty Co., supra,* 148 N.W.2d at 643, *citing Jeske v. General Accident Fire & Life Assurance Corp.,* 1 Wis.2d 70, 89, 83 N.W.2d 167, 177 (1957).

■■■ Although the remedy of reformation was not sought in the pleadings, the principal underlying theme of the plaintiff's contract claim was that the written insurance policy was at variance with the intention of the parties. Thus, reformation is applicable to the facts of this case and this court, invoking the theory of reformation, may grant the legal relief sought. The omission of a request for the proper form of relief does not deny that relief to the party entitled to such relief. Super.Ct.Civ.R. 54(c); *Keiser v. Walsh,* 73 App.D.C. 167, 118 F.2d 13 (1941); *Falk v. Levine,* 60 F.Supp. 660 (D. Mass.1945).[8]

We turn now to the issue raised in the cross-claim of Continental against Holtzman, its agent. There are two aspects of this issue that require discussion: whether Holtzman was negligent as to Continental and, if so, whether damages should be for the entire amount which Continental owes K & T, or for the difference between the premiums paid by K & T and the premiums that would have been paid had the policy issued covered the watches.

■■■ An insurance agent, like any other agent, is required to exercise reasonable care, skill and diligence in the exercise of his employment and if he fails to do so, he may be held responsible for any damage that may result. Restatement of Agency (Second) § 379 (1958). *See also Washington v. Mechanics & Traders Insurance Co.,* 174 Okl. 478, 50 P.2d 621 (1935). Of course, an agent will not be liable to the principal for all mistakes which cause a loss to the principal, but he will be liable for losses caused by failure to use standard care.

■■■ As a general agent of Continental, Holtzman owed a duty to Continental to be at least generally familiar with major provisions of the policies with which it was dealing. The unresolved issue on the cross-claim is whether there was a breach of that duty and, if there was such a breach of duty, whether it resulted in the lack of coverage for watches necessarily included in the prior oral agreement made between the general agent, acting for Continental, and the insured.

■■■ We note that some courts have held that when an agent had the authority to

---

**8.** *See also* the Restatement of Contracts § 507 (1932) which states:

Where circumstances justify reformation of a writing, affecting the contractual relations of the parties to the writing, a court may in its discretion without a preliminary decree of reformation give effect to the transaction as if it had been reformed. . . .

bind the insurance company, but negligently bound it for a price different than he was required to obtain, the only claim the insurance company has against the agent would be for the difference in the premium paid and that premium which would have been paid had the insured received the coverage agreed upon. *Millers Mutual Fire Insurance Co. v. Russell*, 246 Ark. 1295, 443 S.W.2d 536 (1969); *Pennsylvania Millers Mutual Insurance Co. v. Walton*, 236 Ark. 336, 365 S.W.2d 859 (1963).[9] *See also Norby v. Bankers Life Co.*, 231 N.W.2d 665, 671 (Minn.1975). We adopt this reasoning and note that this rule is merely an application of the more general rule that a party can recover only for damages proximately caused by a defendant's negligence. When an agent has the authority to bind the insurance company, and it is undisputed that the company would have accepted the risk, the company's loss is limited to the difference, if any, between the premiums paid and the premiums that would have been paid had the policy issued included the coverage agreed upon.

■ The trial court having found alternatively that Holtzman was negligent in issuing the policy to K & T we remand this case to the trial court to determine whether Holtzman was negligent as to Continental and, if so, for a finding of the amount, if any, owed by Holtzman to Continental, that amount being the difference between the premium paid by K & T and the premium it would have paid had it originally been given the agreed coverage.

*The judgment against Continental Casualty Co. is affirmed but the case is remanded on the cross-claim for further proceedings consistent with this opinion.*

---

**9.** In *Walton* the court illustrated this principle by stating:

"If a merchant's clerk should sell goods on credit, which he is employed to sell in that way, and to a person to whom he might properly sell, but for a price less than he was expressly required to obtain, the measure of the merchant's recovery against the clerk in an action for damages would unquestionably not be greater than the difference between the two prices, and that, too, even if the buyer should become insolvent, and not pay anything. If, on the other hand, the clerk should sell property of his employer of a kind which he was not employed to sell at all, he probably would be held responsible for the whole value." [236 Ark. at 339, 365 S.W.2d at 861, *quoting State Ins. Co. v. Richmond*, 71 Iowa 519, 525, 32 N.W. 496, 499 (1887).]